UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LATEIA MITCHELL, TARIK JONES, <br><br> Plaintiff, <br><br> v. <br><br> PATENAUDE & FELIX APC, <br><br> Defendants. | Case No. C19-809 JLR-TLF <br><br> REPORT AND RECOMMENDATION <br><br> Noted for July 29, 2019 |

This matter comes before the Court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (Dkt. 11.) This case arises from a default judgment taken by defendant against plaintiffs in a state court debt collection action. (Dkt. 1-1.) Plaintiffs allege that defendant's conduct in obtaining this default judgment violated the Fair Debt Collection Practices Act ("FDCPA"), the Washington Consumer Protection Act ("CPA"), and the Washington Collection Agency Act ("CAA"). (*Id.*)

For the reasons set forth below, the Court should GRANT in part and DENY in part, defendant's motion to dismiss pursuant to FRCP 12(b)(6). The undersigned recommends that the Court dismiss plaintiffs' fifth cause of action ("Count 5") with leave to amend and deny the motion as to all other asserted grounds.

The following facts are alleged in the complaint and are assumed to be true only for the purposes of reviewing this motion. *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019).

In April 2018, defendant, acting on behalf of Credit Acceptance Corporation, served plaintiffs with a debt collection lawsuit. (Dkt. 1-1, ¶¶ 5-6.) Plaintiffs contacted defendant the next day to determine whether the matter could be resolved without further legal action. (*Id*., ¶ 7.) Despite not understanding how the debt was so substantial, plaintiffs were willing to discuss payment options because they felt they had no other option and did not want a judgment entered against them. (*Id*.)

When plaintiffs contacted defendant, they spoke with an individual who identified himself as "Jose." (Id., ¶ 8.) Plaintiffs proposed making monthly payments to resolve the matter in an amount which would be sustainable for plaintiffs. (*Id*.) "Jose" stated that defendant would get back to plaintiffs with the response to plaintiffs' offer, and that no further action was needed at that time. (*Id*.) When plaintiffs inquired about what appeared to be a grossly inflated balance, "Jose" directed plaintiffs to speak with the lawyer who brought the lawsuit for defendant, Matthew Cheung, and provided Mr. Cheung's contact information. (*Id*., ¶ 9.)

After concluding the phone call with "Jose," plaintiffs called Mr. Cheung, received his voicemail recording, and left a message asking him to call plaintiffs. (*Id*., ¶ 10.) As time progressed, plaintiffs wondered about the response to their settlement proposal, and placed at least two more calls to Mr. Cheung and left voicemail messages. (*Id*., ¶ 11.) As of April 19, 2019, Mr. Cheung had not returned any of plaintiffs' phone calls. (*Id*., ¶ 12.)

Unbeknownst to plaintiffs, while they were awaiting the promised response from defendant to their settlement offer, or a return call from Mr. Cheung on the status of the lawsuit, defendant filed a motion for default judgment in the collection lawsuit. (*Id*., ¶ 13.) The motion for default judgment was filed on or about July 10, 2018. (*Id*.) In connection with the motion for default, defendant represented that defendant was entitled to default judgment on the ground

that plaintiffs had not responded to the lawsuit. (*Id*.) Defendant never served plaintiffs with a written notice of the motion for default or a copy of the supporting affidavit. (*Id*., ¶14.)

In April 2019, plaintiff Lateia Mitchell learned that her wages had been garnished by defendant. (*Id*., ¶ 16.) Ms. Mitchell discovered that the garnishment was a result of the collection lawsuit. (*Id*.) Ms. Mitchell called defendant and again spoke with "Jose," who confirmed that he and Ms. Mitchell had, in fact, spoken approximately one year prior. (*Id*.)

## I. ANALYSIS

### A. Standard of Review

When reviewing a motion pursuant to rule 12(b)(6), the Court must accept as true "all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d at 530 (internal quotations omitted). The court is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. When evaluating a 12(b)(6) motion, the court may only consider the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530.

### B. Request for Judicial Notice

In support of this motion to dismiss, defendant has submitted the Declaration of Marc Rosenberg Requesting Judicial Notice. (Dkt. 12.) The declaration requests that the Court take

REPORT AND RECOMMENDATION - 3

judicial notice of five exhibits: 1) the summons and complaint defendant filed against plaintiffs in the collection action; 2) the proof of service for the summons and complaint that was filed in the collection action; 3) the motion for default judgment in the collection action and the supporting declaration; 4) the order of default and default judgment filed in the collection action; and 5) the docket for the collection action from LexisNexis CourtLink. (Dkt. 12.) Plaintiffs have not objected to the declaration or request for judicial notice.

Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of court filings in another case. *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003) (*overruled in part on unrelated grounds by Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010)). The Court may take judicial notice that the documents were filed and the date on which they were filed, but it may not take judicial notice of any set of facts set forth in the documents themselves. *See, M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). Similarly, a court may take judicial notice of a public record but cannot take judicial notice of disputed facts contained within a public record. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Exhibits 1-4 are documents that were filed in the collection action. Because these documents were filed in a judicial proceeding, the Court should take judicial notice that these documents were filed and the date on which they were filed. However, the Court should not take judicial notice of any facts set forth in the filings themselves or of any exhibits attached to the filings.

With regards to Exhibit 5, this document was not filed with any court and appears to be a court docket printed from Mr. Rosenberg's LexisNexis account. Neither the Declaration of Marc

1 | Rosenberg, nor the defendant's motion, provides any explanation of how this document is a
2 | public record.  Accordingly, the Court should not take judicial notice of Exhibit 5.

### C. Rooker-Feldman Doctrine

Defendant argues that the Court lacks jurisdiction pursuant to the Rooker-Feldman doctrine. (Dkt. 11 at 3-4.) Defendant contends the state court judgment underlying plaintiffs' action has not been set aside and is therefore presumed to be valid and prima facie evidence of the facts stated in the judgment. (Dkt. 11 at 3.) Defendant asserts that plaintiffs' action is a de facto appeal because it seeks to reverse the state court judgment and is therefore barred by the Rooker-Feldman doctrine.

The Court should hold that Rooker-Feldman doctrine does not bar this Court from considering plaintiffs' action. Plaintiffs have not alleged that their legal injury resulted from a legal error by the state court.  Instead, plaintiffs are alleging that defendant violated the FDCPA, CPA, and CAA with wrongful acts or omissions during litigation.

"Rooker-Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).  The Rooker-Feldman doctrine only prohibits a district court from reviewing the decision of a state court when: 1) a federal plaintiff asserts as their legal injury a legal error by the state court and 2) seeks as their remedy relief from the state court judgment. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).  On the other hand, when a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, the Rooker-Feldman doctrine does not bar jurisdiction. *Vasquez v. Rackauckas*, 734 F.3d 1025, 1036 (9th Cir. 2013); *Kougasian*, 359 F.3d at 1140-41; *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

The Ninth Circuit has held in *Vasquez*, *Kougasian,* and *Noel* that these types of claims do not implicate the Rooker-Feldman doctrine. Further, plaintiffs are not asking this Court to reverse the judgment of a state court or to vacate the judgment underlying the action, they are seeking damages and injunctive relief. (Dkt. 1-1 at 9 ¶ 3-6.) Accordingly, neither prong of the Rooker-Feldman analysis is met by the current action.

### D. Appearance

The Court should conclude that plaintiffs have alleged sufficient well pleaded facts to state a claim against defendant for failing to provide proper notice of motion for default. Defendant argues that the communications between plaintiffs and defendant are insufficient to constitute an appearance and therefore plaintiffs were not entitled to written notice of motion for default. (Dkt. 11 at 4-6.) Plaintiffs allege that defendant (who was plaintiff in the default judgment action) failed to serve a written notice of motion or supporting affidavit in the default judgment action. (Dkt. 1-1 at 3 ¶ 14.) Plaintiffs allege that they made an informal appearance by contacting defendant and were therefore entitled to notice pursuant to CR 55 (Dkt. 1-1 at 5 ¶¶ 14-15.)[1] Plaintiffs further allege that the wrongful act of obtaining a default judgment without notice constituted a violation of the FDCPA, WCPA, and WCAA. (Dkt. 1-1 at 4-7.)

Pursuant to Washington Superior Court Civil Rule (CR) 55(a)(3):

> Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to notice of the motion.

---

[1] The Court notes that the Court is not required to accept as true plaintiffs' assertions that their conduct constituted appearance because the Court is only required to accept as true all well pleaded factual allegations, not legal conclusions couched as factual allegations. *See, Ashcroft*, 556 U.S. at 678.

REPORT AND RECOMMENDATION - 6

According to CR 4(a)(3), "[a] notice of appearance, if made, shall be in writing, shall be signed by the defendant or his attorney, and shall be served upon the person whose name is signed on the summons." And, the Revised Code of Washington (RCW) 4.28.210 provides, "[a] defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance."

However, because default judgments are disfavored, for the purposes of CR 55, the concept of "appearance" is broadly construed and a defendant need not strictly comply with CR 4(a)(3) or RCW 4.28.210. *Servatron, Inc. v. Intelligent Wireless Prods., Inc.*, 186 Wn. App. 666, 675 (2015). In fact, for over a century the Washington courts have applied a doctrine of substantial compliance when determining what constitutes "appearance" under the civil rules. *Morin v. Burris*, 160 Wn.2d 745, 755 (2007), *Mead v. Nelson*, 174 Wn. App. 740, 750 (2013). The Washington courts "have not exalted form over substance," instead the courts examine the defendant's conduct to see if it was "designed to and, in fact, did appraise the plaintiffs of defendants' intent to litigate the case." *Morin*, 160 Wn.2d at 756.

Substantial compliance doctrine must be balanced against the idea that litigation is a formal process. *Id.* at 749. Intent – without anything more -- to defend the action is insufficient to establish an appearance. *Id* at 756. The court must look at the defendant's relevant conduct occurring after litigation has commenced, to determine whether the defendant has acknowledged that a dispute exists in court and has manifested an intent to defend the action. *Id.*, *Meade*, 174 Wn. App. at 750-51.

Washington courts have expressed some concern regarding the application of a liberal substantial compliance standard to the appearance requirement of CR 55. *Morin*, 160 Wn. 2d at 757, *Rosander v. Nightrunners Transp. Ltd.*, 147 Wn. App. 392, 400 (2008). The courts have

noted the possibility of gamesmanship if a party may send a letter expressing an intent to contest litigation then simply ignore formal litigation procedures until the notice of default judgment to decide whether a defense is worth pursuing. *Morin*, 160 Wn. 2d at 757, *Rosander*, 147 Wn. App. at 400. However, in both *Morin* and in *Rosander* this concern arose from a defendant's argument that <u>prelitigation</u> communications should constitute an informal appearance. *Morin*, 160 Wn. 2d at 757, *Rosander*, 147 Wn. App. at 400. In fact, both courts limited their refusal to apply a liberal substantial compliance standard to prelitigation communications. *Morin*, 160 Wn. 2d at 757,[2] *Rosander*, 147 Wn. App. at 399-400. [3]

Determining whether a party has made an informal appearance for CR 55 depends on the specific facts of each case. *Prof'l Marine v. Certain Underwriters*, 118 Wn. App. 694, 710 (2003), *Sacotte Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 143 Wn. Ap. 410, 416 (2008) ("the test for whether a party's conduct constitutes an informal appearance is not the number of contacts made by the party, but whether the party, after the suit has commenced, has shown intent to defend in court.")

For the purposes of this motion, the Court must accept as true all of plaintiffs' well-pleaded factual allegations and construe them in the light most favorable to plaintiffs. If, from these facts, the Court can draw a reasonable inference that plaintiffs manifested their intent to appear – i.e. they did more than simply intend -- in the underlying collection action, then the Court should hold that plaintiffs have sufficiently alleged facts to support appearance.

---

[2] "We believe that our existing approach of liberal application of rules permitting equity, vacation of default judgments, and application of substantial compliance adequately promote justice. […] [W]e hold that parties cannot substantially comply with the appearance rules through prelitigation contacts."

[3] "[O]ur Supreme Court rejected the theory that a party can appear for purposes of CR 55 notice requirement simply through prelitigation communications with the opposing party […] the court ruled that, for purposes of satisfying CR 55's notice requirement, a party need not appear formally by, for instance, filing an answer, but it must appear in court in some way."

After being served with the summons and complaint plaintiffs contacted the defendant to discuss the collection action and attempt to resolve the dispute. During the initial phone call, plaintiffs made a settlement offer, proposing to pay off the debt in installments. The person who answered on behalf of defendants informed plaintiffs that defendant would respond to the offer and that no further action was required by plaintiffs. During this same call plaintiffs disputed the amount of the debt alleged in the complaint stating that it was a grossly inflated amount. Plaintiffs were directed to contact Matthew Cheung regarding the amount alleged in the complaint, as Mr. Cheung was the attorney who had filed the complaint. On three separate occasions plaintiffs called Mr. Cheung and left a voicemail message. Plaintiffs received no response from defendants regarding their settlement offer or from Mr. Cheung.

The reasonable inference is that after litigation had commenced, plaintiffs' allegations of communications with the defendant, if proven, would be sufficient to allege that plaintiffs acknowledged the lawsuit and manifested an intent, to defendant, to defend the action.

**E. Plaintiffs' Causes of Action**

    a. <u>Fair Debt Collection Practices Act</u>

The FDCPA prohibits abusive, deceptive and unfair practices in connection with the collection of debt. 15 U.S.C. § 1692. The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.*, 15 U.S.C. § 1692(e). Because the FDCPA is a remedial statute, courts construe it liberally in favor of the consumer. *Clark v. Capital Credit & Collection Servs., Ins.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

Plaintiffs have alleged violations of the following provisions of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.

### i. Count 1: 15 U.S.C. § 1692e

Section 1692e provides generally that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2) prohibits the false representation of the character, amount, or legal status of any debt. Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken." Litigation efforts used to collect a debt are not a "threat" for purposes of Section 1692e(5). *Hoffman v. Transworld Sys.*, No. 18-1132, slip op. at *8 (W.D. Wash. Nov. 2, 2018), 2018 WL 5734641 *8 (W.D. Wash. Nov. 2, 2018). Section 1692e(10) prohibits the use of any false representations or deceptive means to collect or attempt to collect a debt. Further, the failure to serve a copy of a motion for default can constitute false, deceptive or misleading representations to a court in connection with the collection of a debt. *Weinstein v. Mandarich Law Group, LLP*, No. 17-1897, slip op. at *3 (W.D. Wash. Nov. 28, 2018), 2018 WL 6199249 *3 (W.D. Wash. Nov. 28, 2018).

As has been discussed herein, plaintiffs have alleged sufficient facts to plausibly state that they appeared in the collection action for purpose of CR 55 and were therefore entitled to notice of motion for default. Plaintiffs also allege that defendant failed to serve a notice of motion for default as required by CR 55. Plaintiffs allege that defendant's subsequent collection efforts were unlawful, and that defendant attempted to collect an amount exceeding the debt owed. (Dkt. 1-1, ¶¶ 7, 9, 13, 16, 30.) Therefore, plaintiffs have alleged sufficient facts to state a claim under Section 1692e(2) (falsely representing the amount and legal status of the debt) and Section 1692e(10) (using false or deceptive means to collect or attempt to collect a debt.) However,

REPORT AND RECOMMENDATION - 10

plaintiffs have failed to state a claim under Section 1692e(5) because plaintiffs have not alleged that defendants made any threats to take action that was unlawful or not intended to be taken.

For these reasons, regarding plaintiffs' first cause of action under 15 U.S.C. § 1692e, defendants motion to dismiss should be DENIED.

    ii. Count 2: 15 U.S.C. § 1692f

Section 1692f prohibits the use of unfair or unconscionable means to collect or attempt to collect a debt. Pursuant to Section 1692f(1) it is a violation of this section to collect an amount, including interest, fees and other charges, unless the amount is expressly authorized by an agreement creating the debt or by law. As the court explained in *Weinstein,* the failure to provide notice of motion for default as required by CR 55 can constitute a false, deceptive or misleading representation to a court in connection with the collection of a debt. 2018 WL 6199249 at *3.

As discussed above, plaintiffs have alleged that defendant failed to provide notice of motion for default and attempted to collect an amount that exceeded the debt owed. Accordingly, plaintiffs have sufficiently stated a claim under Section 1692f and defendant's motion to dismiss this cause of action should be DENIED.

    b. Washington Collection Agency Act and Consumer Protection Act

To state a private cause of action to recover damages under the CPA, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 780 (1986). The first three elements of the Hangman Ridge test can be established by a showing that the act is a per se violation of the CPA. *Klem v. Wash. Mut. Bank.*, 176 Wn. 2d 771, 784-86 (2013), *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn. 2d 27, 48 (2009).

A violation of the CAA is a per se violation of the CPA. Rev. Code Wash. § 19.16.440. Plaintiffs allege that defendants committed per se violations of the CPA by violating the CAA. Accordingly, the undersigned will address whether plaintiff has sufficiently alleged these per se violations before addressing the remaining *Hangman Ridge* elements.

### i. Count 3: RCW 19.16.250(21)

Pursuant to RCW 19.16.250(21), a collection agency is prohibited from collecting or attempting to collect, any amount not authorized by law. *Weinstein*, 2018 WL 6199249 at *10.

As has been discussed herein, plaintiffs allege in their complaint that defendant attempted to recover an amount more than the debt owed. (Dkt 1-1 ¶¶ 9, 35.) Plaintiffs further allege that defendants unlawfully obtained a default judgment without providing the required notice of motion, and then attempted to collect the fees and costs associated with this default judgment. (Dkt. 1-1 ¶¶38-39.) Accordingly, for the purposes of this motion, plaintiffs have sufficiently pleaded a per se violation pursuant to RCW 19.16.250(21).

### ii. Count 4: RCW 19.16.250(15)

RCW 19.16.250(15) prohibits a collection agency and their employees from communicating with a debtor and representing or implying that, "the existing obligation of the debtor may be or has been increased by the addition of attorney fees, investigative fees, services fees, or any other fees or charges when in fact such fees or charges may not be legally added to the existing obligation of such debtor."

Plaintiffs have alleged that defendant unlawfully obtained a default judgment and attempted to collect the cost and attorney's fees associated with this purportedly unlawful default judgment. (Dkt. 1-1 ¶¶38-39.) Plaintiffs further allege that defendant made post-judgment communications with plaintiffs to collect the litigation cost and attorney's fees. (Id. ¶ 39.)

Accordingly, for purposes of this motion, plaintiffs have sufficiently pleaded a per se violation pursuant to RCW 19.16.250(15).

### iii. Count 5: RCW 19.16.250(16)

RCW 19.16.250(16) prohibits a collection agency and their employees from threatening to take any action against the debtor which they cannot legally take at the time the threat is made.

Plaintiffs do not allege that any threat was made by defendant. Instead, plaintiffs argue that the statute should be understood to encompass actually taking action which cannot be legally taken. (Dkt. 14 at 14.) Plaintiffs' argument is undermined by the plain language of RCW 19.16.250. Subsections 3, 6, 10, all expressly prohibit a collection agency from committing a prohibited act *or* threatening to commit such act.

If the legislature had intended to prevent both conduct and threat of conduct in subsection 16 it would have done so explicitly in the language of the statute as it did in Subsections 3, 6, 10. Accordingly, the Court should decline plaintiffs' invitation to expand the language of the Revised Code of Washington.

Plaintiffs have failed to allege that defendants threatened to take any illegal action, therefore the undersigned recommends the Court DISMISS Count 5 of plaintiffs' complaint without prejudice and with leave to amend.

### iv. *Hangman Ridge* Factors

To state a private cause of action to recover damages under the Consumer Protection Act, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge,* 105 Wn. 2d at 780 (1986). The first three elements of the *Hangman Ridge* elements may be met by establishing a per se statutory

violation the CPA. *Klem*, 176 Wn. 2d at 787, *Panag*, 166 Wn. 2d at 48, 53. A violation of the CAA constitutes a per se violation of the CPA that establishes the first three elements of the Hangman Ridge elements. *See, Panag*, 166 Wn. 2d at 53.

The injury requirement is met if the plaintiff can prove they have lost property interest or money as a result of the purportedly unlawful conduct. *Id*. at 57. While hiring an attorney to litigate a CPA action is insufficient to establish injury, the expense of investigating the allegedly unlawful conduct and the plaintiff's rights in relation to that conduct, does constitute injury. *Id*. at 62-63. To meet the fifth element, the plaintiff simply must show a causal link between the allegedly unlawful conduct and the injuries suffered. *Hangman Ridge*, 105 Wn. 2d at 793.

As was discussed herein, plaintiffs have sufficiently alleged two violations of the CAA which constitute per se violations of the CPA. Accordingly, for the purpose of this motion, the plaintiffs have sufficiently alleged the first three elements of the Hangman Ridge test. Next, plaintiffs allege that:

> As a result of Defendant's actions detailed above, Plaintiffs have incurred expenses in seeking and retaining counsel in connection with ascertaining their legal rights and responsibilities, have suffered damaged credit (by virtue of a judgment which should not be present), have suffered a wage garnishment, and have been charged with post-judgment interest, fees, and cost which would otherwise not have been possible.

(Dkt. 1-1 ¶ 19.) Other than the assertion that plaintiffs hired an attorney, this is sufficient to state the fourth and fifth element of the Hangman Ridge test. Accordingly, plaintiffs have sufficiently alleged a private right of action under the CPA.

For the foregoing reasons, defendants motion to dismiss with regards to the plaintiffs' state law claims should be GRANTED in part and DENIED in part. The undersigned

recommends that Count 5 in plaintiffs' complaint should be DISMISSED without prejudice and with leave to amend. The motion to dismiss should be DENIED as to all other grounds.

### F. Washington Litigation Privilege

Defendant argues that plaintiffs' state law claims are barred by Washington's litigation privilege. The Honorable John C. Coughenour recently considered this issue in a case with similar facts and the same defendant in *Hoffman v. Transworld Systems*, No. 18-1132, slip op. (W.D. Wash. Nov. 2, 2018), 2018 WL 5734641 (W.D. Wash. Nov. 2, 2018).

In *Hoffman*, the plaintiffs alleged that the defendants (Patenaude & Felix, APC and Matthew Cheung), violated the FDCPA, the CPA and the CAA by filing deficient affidavits in support of a motion for default judgment. *Id*. at *2, 6-7. The defendants moved to dismiss the complaint for failure to state a claim, arguing in part that the Washington litigation privilege barred the complaint. *Id*. at *9, 27-28. Judge Coughenour noted that:

> Neither party has cited, and the Court is not aware of, case law holding that *per se* violations of the CPA based on violations of the FDCPA are barred by Washington's litigation privilege. Therefore, Plaintiff may proceed with their *per se* claims for violation of the CPA where based on Defendant's alleged violations of the FDCPA.

Id. at *27. Judge Coughenour went on to explain that if the plaintiff chose to amend their complaint to allege per se violations of the CPA based on violations of the CAA, the plaintiff "may proceed under the same analysis." *Id*.

Neither party has presented case law, and the Court is not aware of any case law, since Judge Coughenour's decision in *Hoffman* that would change this analysis. The undersigned recommends that the decision in *Hoffman* should be applied to this action. Accordingly, plaintiffs' per se state law claims should not be barred by the Washington litigation privilege.

## II. CONCLUSION

Based on the foregoing, the undersigned recommends that the Court GRANT in part and DENY in part defendant's motion. The undersigned recommends that the court GRANT defendant's motion as to Count 5 of plaintiffs' complaint with leave to amend and DENY the motion as to all other grounds.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 29, 2019**, as noted in the caption.

Dated this 15th day of July, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge